**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

————————————————————— )
                                                       )
SAKEITHEA RODGERS,                     )
                                                       )
            Plaintiff,          )
                                                       )
            v.                  ) Civil Action No. 14-208(EGS)
                                                       )
THOMAS E. PEREZ,                          )
*Secretary of Labor*                           )
                                                       )
            Defendant.          )
————————————————————— )

<u>**MEMORANDUM OPINION**</u>

Plaintiff Sakeithea Rodgers ("Ms. Rodgers") brings this action against the United States Department of Labor ("DOL") alleging discrimination on the basis of sex and retaliation for prior protected civil rights activity in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. and 42 U.S.C. § 1981a. The DOL moves to dismiss Ms. Rodgers's complaint for failure to exhaust her administrative remedies. Upon consideration of the motion, the response and reply thereto, the applicable law, the entire record, and for the reasons stated below, the DOL's motion is **DENIED.**

I.    **BACKGROUND**

      A. **Statuary Framework**

The Civil Service Reform Act of 1978 ("CSRA"), 5 U.S.C. § 1101 *et seq.*, establishes a comprehensive framework for

evaluating employment actions taken against federal employees. When a serious adverse personnel action, such as a discharge, demotion, or reduction in pay, is taken against a federal employee, the employee may appeal the adverse action to the Merit Systems Protection Board ("MSPB" or "the Board"). 5 U.S.C. §§ 7512, 7701. The MSPB is an independent adjudicator of federal employment disputes. An appeal to the MSPB may allege that the personnel action was impermissible solely as a matter of civil service law, or the appeal may allege that the personnel action was taken, in whole or in part, based on discrimination prohibited by another federal statute, such as Title VII of the Civil Rights Act. *See* 5 U.S.C. § 7702. These latter types of actions are known as "mixed cases" because they allege violations of both civil service law and civil rights law. *See* 29 C.F.R. § 1614.302.

A federal employee who seeks to file a mixed case has two options to begin the grievance process: (1) file a discrimination complaint with the agency through the agency's Equal Employment Opportunity ("EEO") Office, or (2) file an appeal directly with the MSPB. 29 C.F.R. 1614.302(a); 5 C.F.R. 1201.154(a). An employee cannot maintain the same action in both forums; she must exhaust her administrative remedies in the forum where her complaint or appeal was first filed. 29 C.F.R. 1614.302(b); *Schlottman v. Perez*, 739 F.3d 21, 22 (D.C. Cir.

2014). Where the employee pursues a mixed case complaint within the agency, she may appeal an adverse agency decision to the MSPB, or sue directly in federal district court. 5 C.F.R. § 1201.154(b); 29 C.F.R. § 1614.302(d)(1)(i). Where the employee pursues a mixed case appeal with the MSPB, she may appeal an adverse decision by filing suit in federal district court. 5 U.S.C. § 7703(b)(2).[1]

### B. Factual Background

On September 25, 2011, Ms. Rodgers was appointed as Director of Human Resources at the Employment Training Administration ("ETA") of the Department of Labor ("DOL"). Compl., Docket No. 1 at ¶ 9. When the DOL first offered Ms. Rodgers the position, she was told she would be compensated at the GS-15, Step 7 pay level. *Id.* at ¶ 7. Ms. Rodgers informed the DOL that, based on her prior employment at the Federal Deposit Insurance Company ("FDIC"), her proper salary level was GS-15, Step 9. *Id.* at ¶ 8. The DOL then offered Ms. Rodgers the position at the GS-15, Step 9 level, and Ms. Rodgers accepted. *Id.* at ¶ 9.

In March of 2012, Ms. Rodgers informed her immediate supervisor, Lisa Lahrman ("Ms. Lahrman"), that she was being

---

[1] Ordinarily, an employee has the right to appeal an adverse MSPB decision to the U.S. Court of Appeals for the Federal Circuit. 5 U.S.C. 7703(b)(1). "Mixed cases" are the exception to this general rule. 5 U.S.C. 7703(b)(2).

sexually harassed by Jose Conejo ("Mr. Conejo"), one of Ms.
Rodgers's subordinates. *Id.* at ¶ 11. According to the complaint,
Ms. Lahrman was unsympathetic and refused to take action. *Id.* In
April 2012, Ms. Rodgers attempted to report Mr. Conejo to the
DOL's EEO Officer, but was told she could not file an EEO claim
because he was her subordinate. *Id.* Ms. Rodgers took no further
action until she was approached by three other women, two of
whom were Mr. Conejo's subordinates, who reported that he had
been sexually harassing them as well. *Id.* at ¶ 12. Ms. Rodgers
again went to the EEO Office and reported Mr. Conejo's conduct.
*Id.*

In October 2012, Ms. Rodgers began to prepare Mr. Conejo's
performance evaluation. *Id.* at ¶ 13. Ms. Rodgers planned to note
his poor performance and harassing conduct on his evaluation,
but Ms. Lahrman refused to accept the evaluation and generally
dismissed Ms. Rodgers's concerns. *Id.* In early November 2012,
Ms. Lahrman called Ms. Rodgers into her office and questioned
her about the starting salary she received upon entering the
DOL. *Id.* This was the first time anyone had questioned Ms.
Rodgers about her appropriate within-grade step since she
accepted the DOL's employment offer more than a year earlier.
*Id.* Following the November 2012 meeting, Ms. Lahrman demanded a
review of Ms. Rodgers within-grade step. *Id.* at ¶ 14. Ms.
Lahrman retroactively downgraded Ms. Rodgers from a Step 9 to a

Step 6. *Id.* The agency then began to initiate an effort to recover the purported overpayment. *Id.*

### C. Procedural History

Ms. Rodgers filed a timely appeal of the step reduction to the MSPB in March of 2013. *Id.* at ¶ 15. Ms. Rodgers initiated the appeal by submitting an online form. Def.'s Mot. Dismiss, Docket 19, Ex.1. She did not have counsel at the time she completed the form.  Pl.'s Mem. Opp. Def.'s Mot. Dismiss. ("Pl.'s Mem. Opp."), Docket No. 20 at 1. On the online form, Ms. Rodgers checked the boxes for "harmful procedural error" and "whistleblower," but did not check the box for prohibited discrimination. Def.'s Mot. Dismiss., Docket No. 19, Ex. 1 at 5.

On May 2, 2013, Ms. Rodgers, through counsel, filed a motion to alter the hearing scheduled in her MSPB appeal. Def.'s Mot. Dismiss, Docket No. 19, Ex. 3. The motion indicated that Ms. Rodgers sought an extension of time "to allow for a reasonable period of time for taking discovery and for amending the claims to include retaliation under Title VII of the Civil Rights Act, which claim was meant to be included in this appeal (making it a "mixed case"). . . .". *Id.* (parenthetical in original). The motion further indicated that it was Ms. Rodgers's intention to claim that her reduction in pay was motivated by her prior protected EEO activity – that is, her reporting Mr. Conejo's sexual harassment – but had mistakenly

5

checked "whistleblower" rather than "discrimination" believing that it was the proper box for a retaliation claim. *Id.*

Mr. Rodgers never formally amended her MSPB appeal form. Def.'s Mot. Dismiss, Docket 19 at 3. However, in an initial telephone conference held before the MSPB Administrative Law Judge (ALJ) on May 6, 2013, Ms. Rodgers informed the ALJ that she was bringing a "mixed case" and that she wished to bring her Title VII claims before the MSPB as well. Pl.'s Mem. Opp., Docket No. 20 at 4.

Ms. Rodgers then sought discovery from the DOL on both the CSRA and Title VII issues. Pl.'s Mem. Op., Docket 20, Ex. 1 at 2. When the DOL failed to respond, Ms. Rodgers moved to compel. *Id.* In her motion to compel, Ms. Rodgers reiterated her intention to bring a mixed case appeal before the MSPB:

> The result of this conference is that there is no question that Ms. Rodgers's appeal presents a mixed case, and, therefore, she is entitled to discovery on all issues relevant to her appeal – both on the civil service law merits and on discrimination and retaliation claims.

*Id.* The ALJ granted in part, and denied in part, Ms. Rodgers's motion to compel. Pl.'s Mem. Opp., Docket 20, Ex. 2 at 1-2.[2] In

---

[2] Specifically, the ALJ ordered the DOL to respond to Ms. Rodgers's interrogatories and requests for production immediately. Pl.'s Mem. Opp., Docket 20, Ex. 2 at 1. The ALJ granted Ms. Rodgers's request to depose one DOL employee over the DOL's objection, but denied her request to depose numerous others. *Id.*

her written decision ruling on the motion to compel, the ALJ indicated that Ms. Rodgers raised "claims of discrimination and retaliation for engaging in EEO activity in connection with her reduction in pay." *Id.* In spite of the ALJ's order, the DOL again failed to respond to Ms. Rodgers's discovery requests, and Ms. Rodgers moved for sanctions. Def.'s Mot. Dismiss, Docket No. 19, Ex 6 at 1-2.

The ALJ held another telephonic conference on September 9, 2013, at which time Ms. Rodgers withdrew her request for a hearing and requested that, as a sanction for not responding to her discovery requests, the record be closed immediately, before the agency had an opportunity to present additional evidence or argument. *Id.* The ALJ granted Ms. Rodgers's motion for sanctions, cancelled the hearing, and closed the record, noting the DOL's complete failure to engage in discovery:

> At the appellant's request, the record in
> this matter is now closed, and I will issue
> a decision based on the written record.  As
> a sanction for refusing to participate in
> discovery, including failure to comply with
> my order to compel, the agency will not be
> permitted to submit additional evidence and
> argument at this late date after failing to
> respond to the appellant's discovery
> requests, notices of deposition, and
> attempts to contact [counsel for DOL].

*Id.*

The ALJ proceeded to issue a decision on the pleadings alone. Def.'s Mot. Dismiss, Docket No. 19, Ex. 7. In an Initial

Decision dated December 11, 2013, the ALJ reversed the DOL's decision to downgrade Ms. Rodgers's pay. *Id*. In reaching this decision, the ALJ noted that the DOL's "lengthy delay in correcting what it deemed [a] pay-setting error argues against the propriety of the agency's action here." *Id.* The ALJ's Order required the DOL to cancel its "administrative correction" of Ms. Rodgers's pay grade and further ordered the DOL to pay Ms. Rodgers any back pay due. *Id.* The ALJ's Initial Decision was entirely silent as to Ms. Rodgers's Title VII claims. Neither party filed a petition for review of the ALJ's Initial Decision and, in accordance with MSPB regulations, the Initial Decision became the ALJ's Final Decision on January 15, 2014. *See* 5 C.F.R. § 1201.113.

Ms. Rodgers filed a Title VII action in this Court on February 12, 2014. Compl., Docket No. 1. Ms. Rodgers notes that by reversing the reduction in her step and pay the MSPB provided her "virtually all the equitable relief" to which she would be entitled had she succeeded on her Title VII claims before the Board. *Id.* However, she now seeks compensatory damages for the "career damage done to her, as well as for the professional and personal embarrassment and humiliation she was made to suffer" as a result of the DOL's Title VII violations. *Id.* As relief, she requests a declaratory judgment finding that she was the victim of intentional sex discrimination and retaliation in

8

violation of Title VII, compensatory damages in the amount $300,000.00, attorney's fees and costs, and injunctive relief. *Id.*

The DOL moved to dismiss on January 23, 2015, arguing that Ms. Rogers failed to administratively exhaust her Title VII claims before the MSPB. Def.'s Mot. Dismiss, Docket No 19 at 1. The DOL argues that (1) Ms. Rodgers failed to raise her discrimination and retaliation claims before the MPSB; (2) even if Ms. Rodgers raised Title VII claims before the MSPB, she subsequently abandoned them; and (3) pursuant to the Supreme Court's decision in *Kloeckner v. Solis*, 133 S.Ct. 596 (2012), the ALJ's silence on the Title VII issue precludes Ms. Rodgers from seeking review in this Court. *Id.*

## II.  STANDARD OF REVIEW

Defendant moves to dismiss Ms. Rodgers's complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Def.'s Mot. Dismiss, Docket 20 at 1. In this district, motions to dismiss for failure to exhaust administrative remedies under Title VII are generally resolved as motions to dismiss for failure to state a claim under Rule 12(b)(6). *Augustus v. Locke*, 699 F. Supp. 2d 65, 69 n.3 (D.D.C. 2010). Rule 12(b)(1) is inapplicable because failure to exhaust administrative remedies is not a jurisdictional bar to bringing suit under Title VII. *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997);

*Marcelus v. Corr. Corp. of Am.*, 540 F. Supp. 2d 231, 234-35 (D.D.C. 2008). In this case, however, the Rule 12(b)(6) standard is inappropriate because the Court must look outside the pleadings to resolve the exhaustion issue. *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). Accordingly, the Court will construe the defendant's motion as a motion for summary judgment.

Summary judgment is appropriate when the moving party has shown that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Waterhouse v. Dist. of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002). A material fact is one that is capable of affecting the outcome of the litigation. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A genuine issue is one where the "evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* A court considering a motion for summary judgment must draw all "justifiable inferences" from the evidence in favor of the nonmovant. *Id.* at 255. To survive a motion for summary judgment, however, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts"; instead, the nonmoving party must come

forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (quoting Fed. R. Civ. P. 56(e)).

### III. DISCUSSION

#### A. Ms. Rodgers Timely Raised her Title VII Claims Before the MSPB

The DOL argues that Ms. Rodgers never properly brought a mixed case before the MSPB: her original appeal form did not indicate she was alleging a Title VII violation and Ms. Rodgers never formally amended her appeal form. Def.'s Mot. Dismiss, Docket No. 19 at 11. Ms. Rodgers argues that she successfully brought a mixed case when she raised the Title VII claim in the May 2013 telephonic conference before the ALJ. Pl.'s Mem. Opp., Docket No. 2 at 3. Further, Ms. Rodgers argues that the ALJ recognized the appeal as a mixed case when she granted her discovery on both the civil service law and civil rights law issues. *Id.* at 4-5.

The Board's regulations provide that "[a]n appellant may raise a claim or defense not included in the appeal at any time before the end of the conference(s) held to define the issues in the case." 5 C.F.R. § 1201.24(b). Ms. Rodgers informed the ALJ she was bringing a mixed case during the May 6, 2013 telephone conference. Pl.'s Mem. Opp., Docket 20 at 4. Ms. Rodger's motion

to compel discovery before the ALJ summarizes the telephone
conference as follows:

> On May 6, 2013, Administrative Judge Clement
> held a telephonic conference with counsel
> for [Ms. Rodgers] and the Agency wherein it
> was clarified that this is a mixed case,
> addressing both the merits of the employment
> actions taken against Ms. Rodgers as well as
> issues of unlawful employment discrimination
> and retaliation.

Pl.'s Mem. Opp., Docket 20, Ex. 1 at 2. Indeed, in ruling on the

Motion to Compel, the ALJ granted Ms. Rodgers discovery on both

the civil service law and civil rights law issues, indicating

that Ms. Rodgers was "raising claims of discrimination and

retaliation for engaging in EEO activity in connection with the

reduction in her pay." Pl.'s Mem. Opp., Docket 20, Ex. 2 at 1.

By raising her Title VII claims in the May 6, 2013 conference to

define the issues, Ms. Rodgers timely brought a mixed case

appeal before the MSPB. Accordingly, the DOL's first argument

must fail.

### B. Ms. Rodgers Did Not Abandon Her Title VII Claims

Next, the DOL argues that even if Ms. Rodgers timely raised

a mixed case appeal, she abandoned her Title VII claims when she

(1) failed to formally amend her appeal; (2) filed a pre-hearing

submission characterizing the issue of the case as a civil

service law issue, rather than a civil rights issue; (3) closed

the record before submitting any evidence of discrimination; and

12

(4) failed to file a petition for review of the ALJ's Initial Decision. Def.'s Mot. Dismiss., Docket No. 19 at 11. Ms. Rodgers counters that she never intended to abandon her Title VII claims, and that any failure to pursue these claims on the merits was solely the fault of the DOL. Pl.'s Mem. Opp., Docket No. 20 at 3, 8.

When an employee "abandons" her claims during the administrative proceedings, she has not exhausted those claims for purposes of seeking review in federal court. *Bush v. Engleman*, 266 F. Supp. 2d 97, 101 (D.D.C. 2003) (citing *Greenlaw v. Garrett*, 59 F.3d 994, 997 (9th Cir. 1995)). An employee abandons her claim where she withdraws from the administrative proceeding prior to its conclusion or expressly disclaims any intention of pursuing the claims further. *Bush*, 266 F. Supp. 2d at 101; *Thurman v. Merit Sys. Prot. Bd.*, 566 F.App'x 957, 960 (Fed. Cir. 2014) (per curium); *Meehan v. U.S. Postal Serv.*, 718 F.2d 1069, 1073-74 (Fed. Cir. 1983). Courts may also consider claims abandoned where the employee has intentionally obstructed the administrative process. *See Vinieratos v. Dep't of Air Force*, 939 F.2d 762, 770 (9th Cir. 1991).

The DOL points to four separate occasions where it argues Ms. Rodgers abandoned her Title VII claims. Each will be discussed in turn.

1.  <u>Ms. Rodgers's Failure to Formally Amend her Appeal</u>
    <u>Form</u>

First, the DOL argues that Ms. Rodgers abandoned her claim
when she failed to formally amend her MSPB form. Def.'s Mot.
Dismiss, Docket No. 19 at 11. As discussed above, the
regulations provide that "[a]n appellant may raise a claim or
defense not included in the appeal at any time before the end of
the conference(s) held to define the issues in the case." 5
C.F.R. § 1201.24(b). While formal amendment of the appeal never
occurred, Ms. Rodgers raised the Title VII issues in a telephone
conference before the ALJ on May 6, 2013. Pl.'s Mem. Opp.,
Docket No. 20 at 4. Accordingly, Ms. Rodgers did not abandon her
Title VII claims through her failure to formally amend her
appeal.

2.  <u>Ms. Rodgers's Characterization of the Issues in her</u>
    <u>Pre-Hearing Submission</u>

Second, the DOL argues that Ms. Rodgers abandoned her Title
VII claims through the characterization of the "issue" of the
case in her pre-hearing submission before the MSPB. Def.'s Mot.
Dismiss, Docket 19 at 11. Specifically, in the submission, Ms.
Rodgers described the "issue" of the MSPB appeal as whether she
received the proper in-grade step upon entry to the DOL. Def.'s
Mot. Dismiss, Docket 19, Ex. 4 at 2. The DOL argues that by
framing the issue as a question of civil service law, rather
than a question of both civil service and civil rights law, Ms.

14

Rodgers abandoned her Title VII claims. Def.'s Mot. Dismiss, Docket 19 at 11.

To bring a mixed-case appeal before the MSPB, the regulations require that the employee allege the appealable employment action took place, "in whole or in part," based on prohibited discrimination. 29 C.F.R. § 1614.302(a)(2). Ms. Rodger's pre-hearing submission to the ALJ includes allegations that she "had reported that both she and other female employees in her unit had suffered sexual harassment at the hands of Jose Conjeo." Def.'s Mot. Dismiss, Docket 19, Ex. 4 at 10. She further alleges that soon after she reported this harassment to Ms. Lahrman, Ms. Lahrman initiated a review of her salary. *Id.* Moreover, the pre-hearing submission twice characterizes Ms. Rodger's MSPB Appeal as a "mixed case." *Id.* at 13, 15. Far from evidencing abandonment of her Title VII claims, by alleging instances of discrimination and retaliation in connection with her reduction in pay, Ms. Rodger's pre-hearing submission is wholly consistent with a mixed case appeal. Accordingly, Ms. Rodgers did not abandon her Title VII claims through her pre-hearing submission.

3. <ins>Ms. Rodgers Closed the Administrative Record Prior to Submitting Evidence of Discrimination</ins>

Third, the DOL argues that Ms. Rodgers abandoned her Title VII claim by closing the administrative record prior to

submitting any evidence of discrimination or retaliation.
Def.'s Mot. Dismiss, Docket No. 19 at 13. According to the DOL,
when the ALJ prevented the DOL from offering any additional
evidence as a sanction for their misconduct in discovery,
nothing prevented Ms. Rodgers from submitting her own affidavit
setting forth the allegedly discriminatory and retaliatory acts.
*Id.* While Ms. Rodgers does not address her failure to submit an
affidavit specifically, she argues that she was "stripped" of
her ability to have her Title VII claims heard on the merits "by
DOL's unconscionable refusal to provide and allow discovery,
even when ordered to do so by the MSPB Administrative Judge."
Pl.'s Mem. Opp., Docket No. 20 at 8. In support of this
argument, Ms. Rodgers cites to the ALJ's decision granting her
counsel full attorney's fees:

> The agency argues that any fees charged in
> connection with [Ms. Rodgers's] EEO and
> retaliation claims should be eliminated
> because [Ms. Rodgers] did not prevail on
> these claims in her appeal. Notably, the
> agency avoids mention of the reason [Ms.
> Rodgers] could not prevail on her claim of
> discrimination and retaliation: she was
> prevented from developing her claims by the
> agency's complete failure to participate in
> the discovery process despite both her
> counsel's and my own interventions in his
> regard. Because of the lack of discovery in
> this matter, the appellant was forced to
> withdraw her request for a hearing and
> instead seek a decision on the written
> record . . . I find that her inability to
> develop these  [Title VII] claims was solely
> the fault of the agency, and I do not find

16

> it reasonable to reduce her claim for fees
> in connection with these issues in these
> circumstances . . . it was evident from her
> initial pleadings that she fully intended to
> develop these claims had the agency provided
> her with the discovery materials she needed.

Pl.'s Mem. Opp., Docket 20, Ex. 3 at 6. The DOL counters that
the ALJ's statements are mere *dicta* and do not establish a basis
for allowing Ms. Rodgers to bring her Title VII claims in this
Court. Def.'s Mot. Dismiss, Docket No. 19 at 2.

*Dicta* or not, Ms. Rodgers was prevented from presenting
evidence on her Title VII claims before the ALJ due to the
agency's "complete failure to participate in the discovery
process." Pl.'s Mem. Opp., Docket 20 Ex. 3 at 6. Ms. Rodgers
never expressly disclaimed her intention of pursuing her Title
VII claims further, nor did she engage in misconduct with the
intention of obstructing the administrative process. It was the
DOL, and not Ms. Rodgers, who failed to meaningfully participate
in the administrative proceedings. Accordingly, Ms. Rodgers did
not abandon her Title VII claims by closing the administrative
record.

### 4. Ms. Rodgers Failed to Object to the ALJ's Initial Decision

Finally, the DOL argues that Ms. Rodgers abandoned her
Title VII claims when she failed to object to the ALJ's Initial
Decision. Def.'s Mot. Dismiss, Docket No. 19 at 15. According to
the DOL, Ms. Rodgers should have filed a petition for review of

17

the ALJ's decision, or alternatively, should have alerted the ALJ that she overlooked the Title VII claims. *Id.* Ms. Rodgers argues that after the DOL refused to provide her with discovery, any attempt to appeal the ALJ's decision would have been futile. Pl.'s Mem. Opp., Docket No. 20 at 7.

Neither the statute nor accompanying regulations require the employee to file a petition for review of the ALJ's Initial Decision prior to proceeding in federal court. The DOL seeks to read in a requirement that is simply not there. Once again, the DOL fails to demonstrate that Ms. Rodgers expressly disclaimed her intention of pursuing her Title VII claims further or engaged in misconduct with intent to obstruct the administrative proceedings. Accordingly, Ms. Rodgers did not abandon her Title VII claims at any point during the administrative proceedings.

### C. The DOL's Reading of *Kloeckner v. Solis* Is Inconsistent with the CSRA

The DOL argues that, according to the Supreme Court's decision in *Kloeckner v. Solis*, 133 S.Ct. 596 (2012), the ALJ's silence on the Title VII claims precludes Ms. Rodgers from seeking review of those claims in federal district court. Def.'s Mot. Dismiss, Docket No. 19 at 9-10.[3] Ms. Rodgers argues that the

---

[3] The DOL argues Ms. Rodgers has no recourse to address her Title VII claims in any forum because she is also precluded from having the claims heard by the DOL's EEO office due to her initial election to proceed before the MSPB. Def.'s Mot. Dismiss, Docket No. 19 at 16, 17 ("there is no procedural avenue

DOL reads *Kloeckner* out of context and that the case did not address the peculiar facts presented here. Pl.'s Mem. Opp., Docket No. 20 at 6.

In *Kloeckner*, the Supreme Court held that an employee who brings a mixed case appeal before the MSPB should seek review of an adverse MSPB decision in federal district court regardless of whether the MSPB decided the case on the merits or dismissed the case on procedural grounds. *Kloeckner*, 133 S.Ct. at 607. *Kloeckner* resolved a circuit split: prior to the decision the Eighth and Federal Circuits had held that jurisdiction in federal district courts, as opposed to the Federal Circuit, was only proper where the MSPB had decided the mixed case appeal on the merits, and not where the MSPB had dismissed the case on procedural grounds. *See Kloeckner v. Solis*, 639 F.3d 834 (8th Cir. 2011) (opinion below); *Ballentine v. Merit Sys. Prot. Bd.*, 738 F.2d 1244 (Fed. Cir. 1984).

In *Kloeckner*, consistent with precedent from the Eighth and Federal Circuits, the government argued that the phrase "judicially reviewable action," as it appears in the CSRA, referred only to MSPB decisions on the merits. *Kloeckner*, 133 S.Ct. at 606. In rejecting this argument, the Supreme Court held

_____

for pursuing [the Title VII] claims now"). *See also* 29 C.F.R. 1614.302(b).

that "[a]ll the phrase signifies is that the Board should dispose of the issue in some way, whether by actually adjudicating it or by holding that it was no properly raised." *Id.* The DOL argues that the Supreme Court's statement should be understood as a limiting principle in that while the MSPB may hold on procedural or substantive grounds, the MSPB must actually <u>hold</u> on the Title VII issue. Def.'s Mot. Dismiss, Docket 19 at 9-10. Due to the ALJ's silence on the Title VII issue in this case, the DOL argues that Ms. Rogers may not proceed to court. *Id.*

This argument fails. First, in *Kloeckner*, the Court was not confronted with the peculiar facts of this case where, through no fault of the employee, the ALJ did not rule on all issues raised. Second, the statute does not require the MSPB to issue a "judicially reviewable action" before the employee may proceed in federal court. Indeed, the CSRA contains a "languishing provision" which allows employees to proceed to court in cases where an appeal has been pending for 120 days and the Board has yet to issue a decision:

> [I]f any time after . . . (B) the 120th day following the filing of an appeal with the Board under subsection (a)(1) of this section, there is no judicially reviewable action . . . an employee shall be entitled to file a civil action to the same extent and in the same manner as provided in section 7171(c) of the Civil Rights Act of 1964.

5 U.S.C. § 7702(e)(1); *see also Butler v. West*, 164 F.3d 634, 638 (D.C. Cir. 2008).[4] Pursuant to the languishing provision, Title VII cases may proceed to federal district court without the agency ever issuing a decision. *See e.g., Ikossi v. Dep't of Navy*, 526 F.3d 1037, 1041 (D.C. Cir. 2008). Put another way, in the Title VII context, there is no requirement that the district court actually <u>review</u> the decision of the administrative entity. Indeed, given that the district court reviews Title VII claims *de novo*, there is no need for the MSPB to issue a written decision prior to this Court hearing the claims. *See* 5 U.S.C. § 7703(c); *Robinson v. Duncan*, 775 F. Supp. 2d 143, 157 (D.D.C. 2011). The DOL's reading of *Kloeckner* is unnecessarily restrictive and inconsistent with the CSRA read as a whole. Accordingly, the ALJ's silence on the Title VII claims does not bar Ms. Rodgers from proceeding in federal court.

### D. The Equities Weigh in Favor of Finding Exhaustion

In addition to the legal arguments above, both sides raise policy arguments in favor of their position. Ms. Rodgers argues that the Court should not allow the DOL to benefit from their misdeeds before the MSPB. Pl.'s Mem. Opp., Docket 20 at 8. The

---

[4] As the Court described in *Kloeckner*, the provision is "designed to save employees from being held in perpetual uncertainty by Board inaction." *Kloecker*, 133 S.Ct. at 606(internal quotation marks omitted).

DOL argues that allowing Ms. Rodgers to proceed here would be sanctioning the DOL for conduct that the ALJ already sanctioned below. Def.'s Rep. Pl.'s Mem. Opp., Docket No. 22 at 6.

"Exhaustion under Title VII, like other procedural devices, should never be allowed to become so formidable a demand that it obscures the clear congressional purpose of 'rooting out . . . every vestige of employment discrimination within the federal government." *Brown v. Marsh*, 777 F.2d 8, 14 (D.C. Cir. 1985) (internal citations omitted). Further, a plaintiff may be "excused from exhaustion when there are equitable reasons for doing so." *Broom v. Caldera*, 129 F. Supp. 2d 25, 29 (2001). One such "equitable reason" may be bad faith or misconduct on the part of the agency. *Berry v. Abdnor,* 1989 WL 46761, at *2 (D.D.C. April 20, 1989). Finally, a plaintiff should not be deprived of judicial review based on failure to follow procedural technicalities of the exhaustion requirement, so long as the defendant has been "put on notice" of plaintiff's claims. *President v. Vance*, 627 F.2d 353, 362 (D.C. Cir. 1980).

The equities weigh in favor of finding exhaustion here. The DOL's own misconduct in discovery before the administrative tribunal prevented Ms. Rodgers from having her Title VII claim adjudicated on the merits. The DOL will not be allowed to benefit from this misconduct now. While administrative exhaustion may, in many circumstances, serve the interests of

judicial economy, the interests of justice are not served where the DOL fails to participate in the administrative proceedings only to later argue that the plaintiff may not proceed in federal court. Title VII cannot serve its purposes when the plaintiff is prevented from taking discovery on her claims. Accordingly, Ms. Rodgers will be permitted to proceed in this Court.

## IV.   CONCLUSION

For the reasons stated above, the DOL's motion to dismiss Ms. Rodgers complaint, construed as a motion for summary judgment, is **DENIED.** An appropriate order accompanies this Memorandum Opinion.

**Signed:**      **Emmet G. Sullivan**
            **United States District Judge**
            **September 29, 2015**